UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


ROBERT G. DUFFEY,              )   3:15CV1297
                              )
         Plaintiff            )
                              )
                              )   JUDGE JAMES G. CARR
         v.                   )   (Mag. Judge Kenneth S. McHargh)
                              )
COMMISSIONER OF SOCIAL        )
    SECURITY,                 )
                              )
                              )
         Defendant            )   REPORT AND
                              )   RECOMMENDATION


McHARGH, MAG. JUDGE

     This case is before the Magistrate Judge pursuant to Local Rule.  The issue

before the court is whether the final decision of the Commissioner of Social Security

("the Commissioner") denying Plaintiff Robert G. Duffey's application for Social

Security Disability benefits under Title II of the Social Security Act, 42 U.S.C §

1381 et seq., is supported by substantial evidence and, therefore, conclusive.


I.  PROCEDURAL HISTORY

     On December 14, 2011, Plaintiff Robert G. Duffey ("Duffey") applied for

Disability Insurance benefits.  (Doc. 11, tr., at 148-149.)  Duffey stated that he

became unable to work because of his disabling condition on December 10, 2010.

(Tr., at 148, 207.)  Duffey listed his physical or mental conditions that limit his

ability to work as:  "Severe pain throughout back and all extremities, including

numbness in extremities.  Neck pain, headaches, & fatigue from lack of sleep."  (Tr., at 184.)

Duffey's SSI application was denied initially and upon reconsideration.  (Tr., at 84-91, 62-70, 93-98, 71-81.)  Duffey filed a written request for a hearing before an administrative law judge.  (Tr., at 99.)

An Administrative Law Judge ("the ALJ") convened a video hearing on December 5, 2013, to hear Duffey's case.  (Tr., at 30-60.)  Duffey was represented by counsel at the hearing.  (Tr., at 33.)  Georgette Gunther, a vocational expert, attended the hearing and provided testimony.  (Tr., at 51-59.)

On January 21, 2014, the ALJ issued her decision applying the standard five-step sequential analysis[1] to determine whether Duffey was disabled.  (Tr., at 12-25.) Based on her review, the ALJ concluded Duffey was not disabled.  (Tr., at 16, 25.)

The Appeals Council denied Duffey's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (Tr., at 1-3.)  Duffey now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Duffey briefs three issues for review:

1.  Was the ALJ's RFC finding contrary to law because [s]he failed to apply 20 C.F.R. § 404.1527(d) and/or disregarded a treating source without good reason?

---

[1]  Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(I). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  Id. § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  Id. § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  Id. § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

3

2.  Was the ALJ's residual functional capacity ("RFC") finding contrary to law and/or not based on substantial evidence?

3.  Was the ALJ's decision contrary to law because it failed to properly evaluate the Plaintiff's claim of disabling pain?

(Doc. 12, at 2.)

## II.  PERSONAL BACKGROUND INFORMATION

Duffey was born on February 8, 1968, and was 43 years old as of his alleged disability onset date.  (Doc. 11, tr., at 62, 148.)  Accordingly, Duffey was at all times considered a "younger person" for Social Security purposes.  See 20 C.F.R. §§ 404.1563(c).  Duffey completed twelfth grade, and is able to communicate in English.  (Tr., at 23, 37.)  He has past relevant work as a police officer, satellite TV installer, store laborer, sales rep, and assistant sales manager.  (Tr., at 52-53.)

## III.  MEDICAL EVIDENCE[2]

Disputed issues will be discussed as they arise in Duffey's brief alleging errors by the ALJ.  A short summary of relevant medical history follows here.  As noted earlier, Duffey applied for DIB benefits on December 14, 2011.  (Tr., at 148, 207.)  Duffey listed his physical or mental conditions that limit his ability to work as:  "Severe pain throughout back and all extremities, including numbness in extremities.  Neck pain, headaches, & fatigue from lack of sleep."  (Tr., at 184.)

---

[2]  The following is merely a summary of the medical evidence relevant to the undersigned's decision. It is not intended to fully reflect all of the evidence the undersigned took into consideration.

4

In 1995, Duffey sustained a back injury following a serious automobile accident while working as a police officer.  This injury ultimately required him to undergo two back surgeries.  (Doc. 11, tr., at 662.)  In 1998, James C. Dozier, M.D. ("Dr. Dozier"), a neurosurgeon, performed a right L4 partial hemilaminectomy, medial facetectomy, and removal of disc and ligament.  (Tr., at 819.)  In 1999, Dr. Dozier performed a bilateral partial heianinectomy of L4, removal of disc, and lateral mass fusion of L4-L5 with 3-D titanium instrumentation.  (Tr., at 828-829.)

In July 2010, Duffey underwent imaging testing for his back and was diagnosed with displacement of a lumbar intervertebral disc and displacement of a thoracic intervertebral disc, both without myelopathy.  (Tr., at 618.)  Specifically, a CT scan of Duffey's thoracic spine revealed mild to moderate degenerative disc disease; small disc protrusions at several locations; mild spinal stenosis; and a small left-sided disc protrusion.  (Tr., at 559.)  Also, a CT of Duffey's lumbar spine revealed a slightly prominent soft tissue anterior to the thecal sac at L5-S1, which could present a central disc extrusion, scar tissue or more prominent venous plexus. (Tr., at 560.)  Diffuse disc bulging with mild narrowing of the spinal canal at L4-L5 was also noted.

On July 21, 2010, a physician noted that Duffey's reflexes were abnormally brisk bilaterally and Duffey had diminished vibration and pin sensation in the left leg.  (Tr., at 561.)  On July 27, 2010, a specialist noted that Duffey looked comfortable, could walk well without his cane, had strength of 5/5, normal tone, and

negative Hoffman's[3] sides bilaterally (Tr., at 274.)  On March 10, 2011, Duffey went to a neurological center, where he reported numbness in his hands and pain in his legs, but the physician noted that Duffey had normal strength in all his extremities and no Hoffman's signs.  (Tr., at 850.)

On June 28, 2012, Duffey experienced a "pop" in his back, went to the Community Memorial Hospital Emergency Room, and received treatment for low back pain.  (Tr., at 958-980.)  The next day, a nurse practitioner, Kori Strubing, indicated that Duffey's lower extremity strength, range of motion, and reflexes were normal bilaterally.  (Tr., at 1032.)  The next month, on July 5, 2010, Duffey exhibited a normal gait during an examination.  (Tr., at 981-982.)  On July 24, 2012, Dr.  Dozier confirmed the "pop" in Duffey's back and stated that Duffey "has had much more significant pain since then."  (Tr., at 1001.)  On August 21, 2012, an x-ray was negative for instability and extension, and showed prior bilateral pedicle screw fusion at L5-S1.  (Tr., at 1016.)

Duffey's primary care physician, Todd Wiley, M.D., completed a physical assessment form (RFC) on April 2, 2013.  (Doc. 11, tr., at 995-999.)  On the form, Dr. Wiley noted that Duffey is not a malingerer, constantly suffered from pain, and was capable of only "low stress" jobs.  Duffey's symptoms were severe enough to interfere with the attention and concentration necessary to perform even simple work tasks, according to Dr. Wiley.  (Tr., at 995-96.)  Referring to Duffey's

---

[3] Hoffman's signs are neurological signs in the hand, which indicate problems in the spinal cord.  Hoffman's signs are associated with loss of grip.

6

limitations in a competitive work situation, Dr. Wiley noted that Duffey: can walk less than a block without rest or severe pain; can only sit for 15 minutes at a time before needing to stand; and can only stand for 10 minutes before needing to sit down or walk around. (Tr., at 996.)

Dr. Wiley further noted that Duffey needs a job that permits shifting positions at will from sitting, standing, or walking and allows Duffey to take unscheduled breaks in an eight-hour day. Dr. Wiley noted that Duffey would need to take 8-12 breaks during the workday, each lasting 10-15 minutes. (Tr., at 998.) Duffey would miss more than four days a month as a result of the treatment or his impairments. (Tr., at 996-999.) According to Dr. Wiley, Duffey must use a cane and can rarely carry less than 10 pounds. (Tr., at 997.) However, Duffey testified that he does not have a prescription for a cane. (Tr., at 50-51.) Duffey can only use his hands to grasp 10% of the time, fingering 20% of the time, and use his arms for reaching (including overhead) 5% of the time. (Tr., at 997.)

In June 2013, Duffey underwent additional imaging on his lumbar spine that revealed: prior operative changes at the L5-S1 level; mild degenerative changes at the L4-L5 level; the hardware grossly intact; and anterior spurring noted at L4-L5 and L3-L4. (Tr., at 1049, 1072, 1081.) In October, 2013, a lumbar CT examination revealed postoperative changes that were consistent with posterior fusion at the L5-S1 level, mild retrolisthesis of L4 and L5, degenerative disc disease at several levels and mild narrowing of the spinal canal at the T11-T12, L3-L4, and L4-L5 levels. (Tr., at 1053-1054.)

7

A pain specialist from Ohio State University's Wexner Medical Center, Elizabeth Yu, M.D., on September 18, 2013, indicated that Duffey: could walk without an assistive device; exhibited normal tandem gait; had intact heel and toe walking; and was limited in flexion, extension, lateral bending, and rotation for the range of motion of his lumber spine due to pain.  (Tr., at 1058.)  Dr. Yu indicated that Duffey had "low back pain and bilateral anterior and posterior thigh pain that is worse with standing and walking." (Tr., at 1056.)  A month later, on October 27, 2013, Dr. Yu noted that Duffey "has required a cane for ambulating due to his back and leg pain," yet remarked that Duffey had a normal gait.  (Tr., at 1061.)

On November 4, 2013, Dr. Yu, reviewing results of a 2013 lumbar spine CT scan, reported nonunion, but there was no evidence of hardware failure.  (Tr., at 1063.)  On December 2, 2013, Dr. Yu opined that the "pain is more suggestive of facetogenic pain and recommended injection treatment and MBB" by her group's pain interventionists. Duffey requested Facet injections with MBB because he felt no relief.  (Tr., at 1064.)

At both the initial and reconsideration levels, the state agency medical consultants found that Duffey could perform a full range of light exertional level work with the following limitations: standing and walking for four hours in an eight-hour day; occasional stooping, kneeling, crouching and crawling; no climbing of ladders, ropes, or scaffolds; and avoidance of all hazards.  (Tr., at 66-68; 77-79.)

## IV.  TESTIMONY OF VOCATIONAL EXPERT

At the hearing, the vocational expert Gunther provided testimony.  (Doc. 11, tr., at 51-59.)  The ALJ found that Duffey had past relevant work as a police officer, satellite TV installer, store laborer, sales rep, and assistant sales manager.  (Tr., at 52-53, 23.)

The ALJ posed a hypothetical question concerning an individual of Duffey's age and education, with the past relevant work above.  (Doc. 11, tr., at 53-54.)  The individual can perform light work, and can stand and walk for four hours in an eight-hour workday.  The person can never climb ladders, ropes or scaffolds, but can occasionally stoop, kneel, crouch or crawl.  The individual must avoid all workplace hazards.  The question posed was whether such a hypothetical person could perform any of the past jobs.  (Tr., at 54.)

The vocational expert first clarified that standing and walking for four hours at light duty is not in the Dictionary of Occupational Titles, "so it's probably going to be considered a little less than light, or sedentary, or with a sit/stand option." The VE answered that the person would be able to do the sales rep position as performed.  (Tr., at 54.)

The ALJ next asked whether there were other unskilled occupations that exist in the economy that such an individual could perform?  The VE responded that there are light, unskilled positions with a sit/stand option, which is not listed in the DOT, "but my statistics do provide for that option."  (Tr., at 54.)

9

The vocational expert Ms. Gunther went to provide several representative occupations, all light and unskilled.  First, Assembler, DOT 699.685-026, with SVP 2.  There are 4,800 jobs in Ohio, and approximately 100,000 in the national economy.  Next, Inspector, DOT 579.687-014, with SVP 2.  Approximately 50,000 jobs in the national economy, and 1,900 in the state of Ohio.  Also, Stock Clerk, DOT 209.587-034, also SVP 2.  Approximately 75,000 jobs in the national economy, and 1,300 in the region.  (Tr., at 54-55.)

In response to a query by the ALJ, the VE would cite the same jobs if there was added an option to stand/walk for two hours, because the jobs had a sit/stand option, meaning the worker could sit or stand at will.  (Tr., at 55.)

The ALJ then modified the first hypothetical to the sedentary exertional level, with the same postural limitations, and same environmental limitations, and asked whether such an individual could perform any of the past work.  Ms. Gunther responded that only the sales rep job could be performed.  (Tr., at 55.)

The ALJ asked if there were other unskilled occupations that such an individual could perform.  Ms. Gunther replied that there were, all at the sedentary, unskilled level.  First, Assembly Bench Worker, DOT 784.687-026, with SVP 2. There are approximately 41,000 such jobs nationally, and 2,430 in the region.  Next, Inspector Bench Worker, DOT 521.687-086, SVP 2.  Approximately 70,000 jobs in the national economy, and 4,220 in the region.  Third, Surveillance System Monitor, DOT 379.367-010, SVP 2. Approximately 17,000 positions in the national economy, and 610 in the region.  (Tr., at 55-56.)

10

Ms. Gunther testified that if an individual could not even sustain the requirements for sedentary work, in a 40-hour work week, such a person would not be able to sustain competitive employment.  (Tr., at 56.)

The ALJ next asked if there would be any transferable skills from the claimant's past work, and the VE replied that there would be, from the sales rep position.  These would include similar sales positions, telemarketer positions, order clerk positions, all at the sedentary level.  (Tr., at 56.)

Counsel for Duffey then posed an alternate hypothetical concerning an individual who has additional restrictions to the ALJ's first hypothetical, namely that the person can only sit for fifteen minutes at a time, and must use a cane while standing and walking.  Also, that the hypothetical person "can never carry more than ten pounds, and rarely can carry less than ten pounds."  Counsel asked, with those limitations, "can the claimant perform his past relevant work?"  (Tr., at 57.)

The vocational expert responded that the hypothetical person would be limited to sedentary work, and would be able to perform any of the sedentary jobs she indicated, including the sales rep position as performed.  (Tr., at 57.)

Counsel then added additional restrictions to the hypothetical:

. . . can never twist, stoop, crouch, squat, climb ladders, or climb stairs. And can only use his hands to grasp, which means obviously turning or twisting objects, ten percent of the time with both hands.  He can only. . . finger . . . [that is,] fine manipulation, 20 percent of the time.  And can only use his arms reaching, and that includes overhead, five percent of the time.

11

(Tr., at 57.)  The VE responded that the only position for that hypothetical would be the surveillance system monitor, because DOT says it does not require any reaching, handling, fingering or feeling.  (Tr., at 58.)

The ALJ asked, if a hypothetical individual required a cane to stand and walk, would such a person be able to perform the light jobs discussed.  The VE responded, no, because the person may have to lift up to 20 pounds to perform light duty, and the cane would inhibit that.  The VE clarified, however, that was not based on the DOT, but rather was her opinion.  Use of a cane is not in DOT, but she opined people with canes are usually limited to sedentary work, if they require the cane for standing (not walking).  (Tr., at 58-59.)

## V.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her January 21, 2014, decision:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since December 10, 2010, the alleged onset date (20 CFR 404.1571 et seq.).

3.  The claimant has the following severe impairments: degenerative disc disease status post lumbar fusion surgery and obesity (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except:  the claimant is limited to standing and walking for 4 hours in an 8-hour workday (consistent with a sit and stand option; no climbing of  ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch or crawl; and the claimant must avoid all exposure to workplace hazards.

6.  The claimant is capable of performing past relevant work as a Sales Rep.  This work does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from December 10, 2010, through the date of this decision (20 CFR 404.1520(f)).

(Doc. 11, tr., at 17-18, 22, 25.)

## VI.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  See 20 C.F.R. §§ 404.1505.

## VII.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  Blakley v. Comm'r of Social Security, 581 F.3d 399, 405 (6th Cir. 2009); Richardson v. Perales, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed.  Id.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).  This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).  However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  See Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).

14

VIII.  ANALYSIS

Duffey briefs three issues for review:

1.  Was the ALJ's RFC finding contrary to law because [s]he failed to apply 20 C.F.R. § 404.1527(d) and/or disregarded a treating source without good reason?

2.  Was the ALJ's residual functional capacity ("RFC") finding contrary to law and/or not based on substantial evidence?

3.  Was the ALJ's decision contrary to law because it failed to properly evaluate the Plaintiff's claim of disabling pain?

(Doc. 12, at 2.)

A.  Treating Source

The first issue raised by Duffey is: "Was the ALJ's RFC finding contrary to law because [s]he failed to apply 20 C.F.R. § 404.1527(d) and/or disregarded a treating source without good reason?"

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians. Gayheart v. Commissioner, 710 F.3d 365, 375 (6th Cir. 2013); Blakley, 581 F.3d at 406; Wilson, 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history.  Id.; 20 C.F.R. §§ 404.1527(c)(2).  The treating physician doctrine requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by medically acceptable clinical and laboratory

15

diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  Gayheart, 710 F.3d at 376 (citing  20 C.F.R. § 404.1527(c)(2)); Blakley, 581 F.3d at 406; Wilson, 378 F.3d at 544.  In other words, treating physicians' opinions are only given deference when supported by objective medical evidence.  Vance v. Commissioner of Social Security, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing Jones v. Commissioner, 336 F.3d 469, 477 (6th Cir. 2003)).

Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations.  Gayheart, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(1) -(6).  Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s).  Blakley, 581 F.3d at 406; Vance, 2008 WL 162942, at *3.  Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight.  Gayheart, 710 F.3d at 376; Blakley, 581 F.3d at 406-407; Winning v. Commissioner, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

Remand may be appropriate when an ALJ fails to provide adequate reasons explaining the weight he assigned to the treating source's opinions, even though "substantial evidence otherwise supports the decision of the Commissioner."

Kalmbach v. Comm'r of Soc. Sec., No. 09-2076, 2011 WL 63602, at *8 (6th Cir. Jan. 7, 2011) (quoting Wilson, 378 F.3d at 543-46).

Here, the ALJ's decision addressed the medical opinion evidence, and gave "great weight" to the opinions of the state agency medical consultants, finding their opinions "consistent with the evidence of record." The reviewing physicians found that Duffey can perform a full range of light exertional level work, except standing and walking for only four hours of an eight hour workday, plus other limitations not relevant to the issue under consideration. The ALJ found the medical consultants' opinions were consistent with the medical record, "which reflects that although the claimant has some limitations due to back pain and some reduction in range of motion in his lumbar spine, he is still able to ambulate [walk] effectively, with normal strength and tone." As the ALJ found that the state agency opinions were supported by the evidence as a whole, they were accorded great weight. (Doc. 11, tr., at 21.)

The ALJ provided less weight to the opinion of the treating physician, Todd Wiley, M.D., who provided a physical RFC report on Apr. 2, 2013. (Doc. 11, tr., at 21; see also tr., at 995-999.) On the form, Dr. Wiley indicated that Duffey experiences pain and other severe symptoms on a constant basis, and is only capable of performing low stress jobs which do not include physical stress. Dr. Wiley indicated that Duffey can only walk less than one city block, can sit for 15 minutes at a time, must use a cane or other assistive device for standing and

17

walking, and can only stand for ten minutes at a time, as well as other restrictions.

(Doc. 11, tr., at 21.)

The ALJ determined that Dr. Wiley's opinion was not consistent with the state agency consultants' opinions, "and is not consistent with the treatment record as a whole." The ALJ continued:

> Specifically, there are no objective findings in the record to support that the claimant can only sit for 15 minutes at a time or that he can only lift and carry less than 10 pounds. In fact, the claimant's physical examination records suggest that he has often had normal strength in all extremities, normal gait, and normal tone. (2F/2, 7F/1 and 13F/2/6). In addition, Dr. Wiley does not provide specific objective findings to support his severely limiting findings. For the foregoing reasons, Dr. Wiley's opinion is provided little weight.

(Doc. 11, tr., at 21.)

Duffey argues that the ALJ's RFC finding is devoid of the mandatory legal analysis required by 20 C.F.R. § 1527(d). Duffey asserts that the ALJ's failure to adequately explain the weight given to the treating medical opinions under the regulations constitutes reversible error. (Doc. 12, at 9, citing Hall v. Commissioner, No. 04-5572, 2005 WL 2139890, at *5 (6th Cir. Sept. 2, 2005).)

Duffey contends that the ALJ "failed to fully explain the weight" accorded to medical opinions, particularly that of Dr. Wiley. Duffey argues that utilizing Dr. Wiley's finding that Duffey needed a sit/stand option while using a cane would result in a finding of disability. (Doc. 12, at 10, citing tr., at 997-998.) Duffey asserts that Dr. Wiley is a treating source, thus "his entire opinion should have been given controlling weight." (Doc. 12, at 10, citing Elias v. Commissioner, No.

1:10CV0472, 2010 WL 5158871 (N.D. Ohio Dec. 14, 2010).)  In addition, Duffey argues that the ALJ erred by failing to give good reasons for not following Dr. Wiley's opinion, and failed to articulate a good reason to "disregard Plaintiff's need to use a cane," which is supported by other treating sources.  (Doc. 12, at 10-11.)

The Commissioner responds that the ALJ carefully considered all of the record evidence when assessing Duffey's RFC, and fully accounted for all of his limitations.  The Commissioner contends that the ALJ appropriately gave significant weight to the state agency medical consultants' opinions, in that opinions were consistent with the medical record.  (Doc. 15, at 6-7.)

The Commissioner points out that review of Duffey's physical examinations supports the ALJ's decision to give great weight to the agency consultants' opinion. (Doc. 15, at 7-8, citing tr., at 20-21, with citations to record.)  The ALJ found that the physical exams "suggest that he has often had normal strength in all extremities, normal gait, and normal tone."  (Doc. 11, tr., at 21, citing record.)

The exams cited by the ALJ (tr., at 21) include the following:  At a July 27, 2010, examination, Dr. Kaplansky determined that "[Duffey] can ambulate [walk] without his cane."  (Doc. 11, tr., at 618; cited as 2F/2.)  At a July 5, 2012, exam, Dr. Bojrab found that Duffey had a normal gait.  (Doc. 11, tr., at 981-982; 7F/2.)

On September 18, 2013, Dr. Yu noted that Duffey reported that he required "a cane for ambulating due to the back and leg pain."  (Doc. 11, tr., at 1056; 13F/2.)  Dr. Yu also noted that Duffey "denies any loss of hand dexterity or gait instability."  At that same exam, Dr. Yu found, as to gait:  "Patient is able to walk without an

assistive device or an analgic gait." She also noted: "Normal tandem gait." (Doc. 11, tr., at 1058.)

Dr. Yu examined Duffey again on October 26, 2013. She again noted that Duffey "ambulates with a cane," and that he reported his pain was worse with walking and standing. He reported that he "can sit for 45 minutes." Dr. Yu's finding at that time was: "Normal gait pattern. Normal tandem gait." (Doc. 11, tr., at 1060-1061; 13F/6.)

The Commissioner asserts that the ALJ properly discounted the opinion of the treating physician, Dr. Wiley, because the ALJ found that Dr. Wiley's medical source opinion contained "severely limited findings," which were unsupported by the objective medical evidence. (Doc. 15, at 8.) The Commissioner points out that, other than providing check-mark answers on a form, Dr. Wiley provided no objective findings to support his "severely limiting findings." (Doc. 15, at 8, citing Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).) The ALJ had summarized that "physical examinations of the claimant throughout the adjudicated period often noted that the claimant was [walking] well." (Tr., at 20, citing various examination results.)

After fully considering the arguments of both parties (doc. 12, 15, 17), the court finds that the ALJ provided good reasons for the weight assigned to the Physical RFC Report (doc. 11, tr., at 995-999) submitted by the treating physician, Dr. Wiley. See, e.g., Gayheart, 710 F.3d at 376; Blakley, 581 F.3d at 406-407. The ALJ found that Dr. Wiley's RFC Report was inconsistent with other substantial

20

evidence in the medical record, and identified the evidence on which that determination was based.  (Tr., at 21; see generally 20 C.F.R. § 404.1527(c)(2); Gayheart, 710 F.3d at 376; Hall, 2005 WL 2139890, at *5; see also tr., at 20.)

As the Commissioner points out, Dr. Wiley did not provide explanations supporting the options he selected on the RFC form, which properly impacts the weight assigned to his opinion.  See 20 C.F.R. § 404.1527(c)(3) (the better explanation source provides for opinion, the more weight); Hall, 2005 WL 2139890, at *5.

In summary, the ALJ's good reasons for the weight assigned to Dr. Wiley's opinion were supported by substantial evidence in the record, and are sufficiently specific to make clear the weight assigned to the treating physician's opinion, and the reasons for that weight.  See Gayheart, 710 F.3d at 376; Blakley, 581 F.3d at 406-407; Hall, 2005 WL 2139890, at *5; Winning, 661 F.Supp.2d at 818-819.

The court finds that the ALJ's decision concerning the weight given to Dr. Wiley's opinion is supported by good reasons and by substantial evidence in the record.

## B.  RFC Contrary to Law?

The second issue raised by Duffey is:  "Was the ALJ's residual functional capacity ("RFC") finding contrary to law and/or not based on substantial evidence?"  Duffey finds fault with the ALJ's evaluation at Step 4 and Step 5 of the sequential evaluation.  (Doc. 12, at 11-13.)  The court notes the claimant bears the burden at

21

Step Four of showing an inability to perform his past relevant work.  Allen v.

Califano, 613 F.2d 139, 145 (6th Cir. 1980).

i.  Step 4

At Step 4, Duffey contends that the ALJ erred in finding that the claimant

could perform his prior work as a sales representative.  Duffey argues the

determination that Duffey has that ability should have included a finding of fact as

to his RFC, a finding of fact as to the physical demands of a sales rep, and a finding

of fact that Duffey's RFC could be a sales representative.  (Doc. 12, at 12, citing SSR

82-62.)  Duffey claims that an accurate RFC finding should have including the use of

a cane, and a sit-stand option.  (Doc. 12, at 12.)

Duffey apparently argues that the requisite findings of fact should appear in

the decision itself.  This court has found it permissible to look to testimony from the

hearing to determine whether the ALJ made the required findings of fact as to the

physical and mental demands of claimant's past relevant work.  Adams v. Colvin,

No. 1:12CV2338, 2014 WL 185783, at *6 (N.D. Ohio Jan. 16, 2014); see also Whitney

v. Commissioner, No. 3:13CV01407, 2014 WL 3828286, at *13 (N.D. Ohio Aug. 4,

2014); Sutton v. Colvin, No. 1:12CV2683, 2013 WL 3716540, at *12 (N.D. Ohio July

12, 2013).

Duffey testified that his job as a sales representative was "a desk job basically

and working on the phone and on the computer and things like that."  (Tr., at 40.)

The VE testified that the sales rep position (DOT 271.357-010) was a light, skilled

position, "performed at sedentary per the claimant."  (Tr., at 53.)  The VE opined

that the first hypothetical, which included standing and walking for four hours of a workday, would be "considered a little less than light, or sedentary, or with a sit/stand option." The VE stated that Duffey would be able to do his past sales rep position as performed, even within the added hypothetical of a sit/stand option. Id. at 54-55. (Of course, the VE also found additional positions that Duffey could perform, as set forth in the recitation of the hearing testimony, supra. (Tr., at 54-56.))

When Duffey's attorney added the hypothetical use of a cane while standing and walking, the VE maintained that the claimant would be able to perform any of the sedentary jobs she had indicated, "including his sales rep position as he performed it." (Tr., at 57.)

Based in part on testimony at the hearing, the ALJ found that Duffey retained the capacity to do his part relevant work as a sales rep. The ALJ compared Duffey's RFC with the physical and mental demands of the work, and found that he is able to perform the job as it is actually performed. (Tr., at 23.)

The court finds that the ALJ made the requisite Step Four findings in accordance with SSR 82 62, and Duffey has failed to demonstrate that those findings are not supported by substantial evidence.

ii. Step 5

Duffey claims that the Step 5 hypothetical "must take into consideration all of the signs and symptoms that flow from the Plaintiff's physical impairments." (Doc. 12, at 12.) Duffey contends that the hypothetical adopted by the ALJ failed to take

23

into consideration his standing and walking limitations, which include: "Sit/stand option at will; and use of a cane." Id. at 13. Thus, he argues the ALJ's hypothetical question is legally deficient, and the decision must be reversed. Id.

As noted earlier, the ALJ did query the vocational expert on both the issue of a sit and stand option, and the use of a cane. The ALJ ultimately adopted a residual functional capacity assessment which did include a limit of "standing and walking for 4 hours in an 8-hour workday (consistent with a sit and stand option) . . ." (Tr., at 21.) The ALJ found that the medical record indicated that "despite his spinal impairment, he was able to ambulate without the need for an assistive device, had intact heel and toe walking, could perform tandem walking, had normal strength and tone in his extremities, and had normal gait." (Tr., at 22.)

A hypothetical question to the vocational expert must accurately portray the claimant's physical limitations. Pasco v. Commissioner of Social Sec., No. 03-4358, 2005 WL 1506343, at *14 (6th Cir. June 23, 2005); Varley v. Secretary of HHS, 820 F.2d 777, 779 (6th Cir. 1987) (citing cases). However, hypothetical questions need only incorporate those limitations which the ALJ has accepted as credible. Parks v. Social Sec. Admin., No. 09 6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011).

The court finds that the ALJ's RFC finding was based on substantial evidence

## C.  Evaluating Claim of Disabling Pain

The third issue raised by Duffey is:  "Was the ALJ's decision contrary to law because it failed to properly evaluate the Plaintiff's claim of disabling pain?"  Duffey

24

argues that a claim of disabling pain must be evaluated under 20 C.F.R. § 404.1529. (Doc. 12, at 13, citing Felsky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).)  He contends that the record contains substantial evidence that he suffers from disabling pain, and that the nature and extent of his pain is corroborated by Dr. Wiley, other treating sources, and the medical record.  Id. at 14.  However, the ALJ's decision does not address the factors outlined in Section 404.1529(c)(3), and thus did not properly evaluate whether he suffers from disabling pain.  Id. at 13-14.

The Commissioner responds that the ALJ considered Duffey's subjective complaints of pain, but reasonably determined that the record did not support the severity of his symptoms.  (Doc. 15, at 12.)   In addition, Duffey fails to provide evidentiary support for his contention that the nature and extent of his pain was corroborated.  Id.

The Commissioner points out that, contrary to claimant's assertions, the ALJ addressed a number of the factors under Section 404.1529(c)(3).  (Doc. 15, at 12, citing tr., at 22.)  The ALJ stated that the treatment records indicated Duffey received only conservative treatment, which consisted of medication administration and monitoring, which the ALJ found was inconsistent with the alleged severity of his symptoms.  Id. at 12-13, citing tr., at 22.  The ALJ also found that claimed side effects of the medication were not well documented in the records as a whole, and that the lack of documentation and treatment in the record indicated generally that any side effects were mild, and would not interfere in any significant manner with Duffey's ability to perform work.  Id. at 13, citing tr., at 22.

25

The Sixth Circuit has established a two-part test to evaluate complaints of disabling pain when the pain forms a basis of the claimant's disability claim.  Rogers v. Commissioner, 486 F.3d 234, 247 (6th Cir. 2007).  First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms."  Id. (citing 20 C.F.R. § 416.929(a)).  If the first test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities."  Id.  Social Security Ruling 96-7p lists the factors relevant to the ALJ's determination at this step.  These factors include:  the individual's daily activities, the frequency and intensity of the individual's pain or other symptoms, any medication the individual takes or has taken to alleviate pain or other symptoms, and treatment, other than medication, the individual has received for relief of pain or other symptoms.  SSR 96-7p.

The ALJ found that Duffey's back and leg pain could reasonably be expected to cause some of Duffey's alleged symptoms.  However, the ALJ then determined that his statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.  (Tr., at 19.)  The ALJ considered Duffey's daily activities (tr., at 19), as well as the conservative treatment regimen, which consisted of medication administration and monitoring, which the ALJ found was inconsistent with the alleged severity of his symptoms (tr., at 22).  The ALJ found that the medical evidence of record to be more probative than the claimant's testimony and allegations.  (Tr., at 22.)

26

The court finds that the ALJ's decision concerning the impact of Duffey's allegedly disabling pain is supported by substantial evidence in the record.


SUMMARY

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence.

The record evidence as discussed in the ALJ's decision is such that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination.  The decision of the ALJ should be affirmed.


RECOMMENDATION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.


s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge


Date:  July 6, 2016

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file

27

objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).